```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
UNITED STATES OF AMERICA,                                        :
                                                                 :
                                                                 :     15 Cr. 95 (JPC)
            -v-                                                  :
                                                                 :     OPINION AND ORDER
                                                                 :
SHANE BENNETT,                                                   :
                                                                 :
                        Defendant.                               :
                                                                 :
-----------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

Defendant Shane Bennett is a federal inmate who moves, *pro se*, for compassionate release from prison under 18 U.S.C. § 3582(c)(1)(A)(i). Dkts. 3365; 3381 ("Motion"). The Government opposes Bennett's motion. Dkt. 3385 ("Opposition"). For the reasons that follow, the Court finds that Bennett has failed to show "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i). Further, several section 3553(a) factors weigh heavily against releasing Bennett early from prison. The Court therefore denies Bennett's motion for compassionate release.

## I.   Background

Bennett was an associate of the Big Money Bosses ("BMB") street gang that operated in Bronx, New York. Dkt. 1802 ("PSR") ¶¶ 10, 21. During his association with BMB, Bennett possessed firearms and sold crack cocaine at BMB's "Forts" location on White Plains Road and 224th Street. *Id.* ¶¶ 22-23. He also participated in multiple forcible robberies, including ones in which he tied up a victim in a home invasion robbery, choked a victim on the street, and brandished a firearm to rob a cellphone from a victim. *Id.* ¶ 24.

On July 20, 2016, Bennett was arrested and charged in a Superseding Indictment with

racketeering conspiracy, narcotics conspiracy, distribution of narcotics within one thousand feet of playgrounds and schools, and use of firearms in furtherance of the racketeering and narcotics conspiracies.  PSR ¶ 25; Dkt. 97.  On August 4, 2017, Bennett appeared before the Honorable Henry B. Pitman, United States Magistrate Judge, and was allocated as to his guilt to the racketeering conspiracy count.  Dkt. 1579; PSR ¶¶ 7, 28.[1]  On August 29, 2017, Judge Nathan accepted Bennett's guilty plea.  Dkt. 1673.  On November 7, 2018, Judge Nathan imposed a below-Guidelines sentence of ninety-six months' imprisonment.  Dkt. 2440; Bennett Sentencing Tr. at 18.

In a letter submitted to the Court on May 24, 2022, Bennett requested early release from his term of imprisonment under the First Step Act.  Dkt. 3365.  On May 26, 2022, the Government responded to Bennett's letter, advising the Court that Bennett "appears to be seeking to make a motion for compassionate release pursuant to 18 U.S.C. § 3582" and that, "[t]o the extent the Court construes the defendant's motion as one for compassionate release, the Court may wish to deny the motion with leave to refile after the defendant satisfies the exhaustion requirements."  Dkt. 3368 at 1.  On May 31, 2022, the Court advised Bennett that his May 24, 2022 letter "appears to be a request for compassionate release pursuant to 18 U.S.C. § 3582" but his "letter does not indicate whether he has exhausted his administrative rights under section 3582(c)(1)(A), either by seeking relief from the Bureau of Prisons or the warden of his facility."  Dkt. 3372 at 1.  Accordingly, the Court directed Bennett to "advis[e] the Court as to whether he has exhausted his

---

[1] Pursuant to a written plea agreement, the Government and Bennett stipulated to an offense level of 27 and a Criminal History Category of IV under the United States Sentencing Guidelines, yielding a Guidelines range of 100 to 125 months' imprisonment.  PSR ¶ 7.  The Probation Department, however, calculated a Guidelines offense level of 28 and a Criminal History Category of V, resulting in a Guidelines range of 130 to 162 months' imprisonment.  *Id.* ¶¶ 29-91, 113.  At Bennett's sentencing, the Honorable Allison J. Nathan agreed with the Guidelines range calculation in the PSR.  Dkt. 2482 ("Bennett Sentencing Tr.") at 4.

administrative rights and, if so, how he satisfies the exhaustion requirements." *Id.* If Bennett had not exhausted his administrative rights, the Court permitted him to "renew his request for compassionate release after he exhausts his administrative rights and does not obtain the relief sought." *Id.* at 1-2.

On July 13, 2022, the Court received Bennett's renewed request for compassionate release, which attaches a letter addressed to "Warden Hector Joyner" dated June 5, 2022, and informs the Court that Bennett "wrote the warden," and that it had been "30 days and he didn[']t respond." Motion at 1-2. In his Motion, Bennett states that he is supposed to go to the halfway house on November 15, 2022 and requests a four-month reduction of his sentence because he is an only child and his mother, who is 75 years old, is ill; he enrolled in a number of programs and has no disciplinary record during his time in prison; and he is overweight and suffers from high blood pressure. *Id.* Construing Bennett's motion liberally to be one for compassionate release, the Government filed a letter brief in opposition on July 26, 2022, urging the Court to deny early release on the grounds that Bennett has not shown extraordinary and compelling reasons warranting a sentence reduction, the 18 U.S.C. § 3553(a) factors counsel against release, and Bennett cannot show that he is not a danger to the community. Opposition at 3-5.[2]

## II. Legal Standard

Under 18 U.S.C. § 3582(c)(1)(A), defendants may seek compassionate release from prison. *United States v. Thomas*, No. 15 Cr. 667 (KPF), 2020 WL 6364677, at *3 (S.D.N.Y. Oct. 29, 2020). After the First Step Act, district courts now face two questions in resolving these motions:

---

[2] The Government states in its letter brief that "[t]he Bureau of Prisons (BOP) recently informed the Government that Bennett's facility does not have a record of his June 5, 2022 request, but for purposes of this motion the Government is not contesting that Bennett has met the exhaustion requirements." Opposition at 1-2.

3

(1) whether extraordinary and compelling reasons merit reducing the sentence, and (2) whether the applicable section 3553(a) factors warrant the reduction. *See United States v. Pabon*, No. 17 Cr. 312 (JPC), 2021 WL 603269, at *2 (S.D.N.Y. Feb. 16, 2021). In doing so, the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13 no longer limits district courts. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). Instead, courts may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.*

To justify compassionate release, the defendant must "show that he is eligible for and deserving of compassionate release." *United States v. Newton*, No. 18 Cr. 373 (RJS), 2021 WL 321847, at *2 (S.D.N.Y. Feb. 1, 2021). But even if a defendant makes that showing, "[a] court is not required to reduce a sentence on compassionate release grounds" because the decision "rests in the discretion of the court." *United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020).

### III. Discussion

**A. Extraordinary and Compelling Reasons**

Bennett requests early release from imprisonment to care for his elderly mother who is ill. Motion at 1. While "the need to care for one's aging and sick parent may, in certain circumstances, warrant a finding that an extraordinary and compelling reason exists," such is not the case here. *United States v. Yoda*, No. 15 Cr. 95 (AJN), 2020 WL 5502325, at *2 (S.D.N.Y. Sept. 11, 2020). As the Government points out in its Opposition, aside from stating that he is an only child and his 75-year-old mother is ill, "Bennett does not explain what his mother's illness is or how ill she is; nor does he claim that he is the only person who can care for her." Opposition at 4; *see also Pabon*, 2021 WL 603269, at *4 (denying motion for compassionate release for, among other reasons, the defendant's failure to show that he was his wife's only available caretaker); *Yoda*, 2020 WL

4

5502325, at *1, *3 (finding that the defendant's wish to care for his father, who is elderly and suffers from numerous health conditions, including diabetes, high blood pressure, and glaucoma, did not constitute an extraordinary and compelling reason that warrants compassionate release because "the Defendant does not allege in his motion that he is, or would be, the only available caregiver"); *United States v. Martinez*, No. 19 Cr. 233S, 2022 WL 1089671, at *4 (W.D.N.Y. Apr. 12, 2022) (denying motion for compassionate release because, among other reasons, the defendant "fail[ed] to establish that no alternative sources of care are available, including other family and friends or social service and community programs"); *accord United States v. Johnson*, No. 98 Cr. 860 (ARR), 2020 WL 2124461, at *3 (E.D.N.Y. May 5, 2020) (holding that the defendant's "conclusory statement that his 'presence is very much needed' to help his 'elderly mother who takes care of [his] mentally challenged sister' . . . is not sufficient to meet his burden that he is facing an extraordinary family circumstance, which would typically require something similar to the death or incapacitation of a spouse or a child's caregiver").

Bennett also argues that he "took every program that was in [his] reach," including participating in the Bureau of Prisons's ("BOP") Residential Drug Abuse Program ("RDAP") and enrolling in GED courses for the past year. Motion at 1-2. While the Court commends such efforts, participating in the RDAP and taking GED courses does not ascend to extraordinary and compelling reasons that warrant early release. Indeed, district courts in this Circuit have widely held that "rehabilitation through participation in prison programs and religious organization does not constitute an 'extraordinary and compelling' justification for release." *United States v. Needham*, No. 06 Cr. 911 (AKH), 2022 WL 19769, at *4 (S.D.N.Y. Jan. 3, 2022); *see also United States v. Torres*, No. 16 Cr. 500 (RMB), 2021 WL 1131478, at *3 (S.D.N.Y. Mar. 24, 2021) (finding enrollment in GED and other courses was not an extraordinary and compelling reason for

5

relief); *United States v. Bolden*, 15 Cr. 466 (VB), 2021 WL 242551, at *2 (S.D.N.Y. Jan. 25, 2021) ("But participation in or completion of RDAP, while laudable, is not an extraordinary and compelling reason warranting a compassionate release."); *United States v. Reyes*, No. 91 Cr. 358 (KPF), 2020 WL 5518483, at *3 (S.D.N.Y. Sept. 14, 2020) (finding completion of "dozens" of BOP programs and GED, without more, did not "support the extraordinary relief of compassionate release"). Nor is Bennett's lack of disciplinary record and good behavior during his imprisonment a basis to grant compassionate release.[3] *See United States v. Salgado*, No. 15 Cr. 681 (VEC), 2022 WL 3043100, at *2 (S.D.N.Y. Aug. 2, 2022) (holding that even if the defendant had demonstrated his rehabilitation and had a spotless disciplinary record, these facts "would not warrant a sentence reduction" because "[t]o find otherwise would convert the process for obtaining a compassionate release into a de facto parole system, through which defendants with good behavior are rewarded with sentence reductions," which is contrary to Congress's intent); *United States v. Corin*, No. S7 10 Cr. 391 (CM), 2020 WL 5898703, at *4 (S.D.N.Y. Oct. 5, 2020) ("[G]ood behavior is not, by itself, a basis to grant compassionate release pursuant to 18 U.S.C. § 3582(c); rather it is something the Court would be obliged to consider under 18 U.S.C. § 3553(a), if a defendant otherwise met his burden of demonstrating a basis for release." (citations omitted)).

Although not raised in his Motion, Bennett's letter to Warden Joyner, which was appended to his Motion, mentions that he suffers from high blood pressure and is overweight. Motion at 2.[4]

---

[3] The Government appears to dispute Bennett's allegation that he has "never received any disciplinary reports in this jail or my last jail." Motion at 2. According to the Government, "[w]hile [Bennett's] BOP disciplinary record is not lengthy, it is also not spotless; he was disciplined for fighting in 2018." Opposition at 4-5. The Court need not resolve any disagreement as to his conduct while incarcerated, because even accepting Bennett's representations regarding his compliance in prison, the Court denies his Motion.

[4] The Government represents that, based on its review of Bennett's medical and disciplinary records which the BOP provided to the Government, Bennett "refused the COVID-19 vaccine." Opposition at 3 & n.1. And although "[h]is medical records do indicate a prescription

6

Crediting Bennett's allegations as true, the Court finds that Bennett's health conditions do not meet the standard of extraordinary or compelling reasons justifying release, even in light of the COVID-19 pandemic. As an initial matter, Bennett is only thirty years old and, aside from suffering from high blood pressure and being overweight, he points to no other underlying health condition that would place him at a greater risk of serious illness were he to contract COVID-19 or justify his early release. *See United States v. Folkes*, No. 18 Cr. 257 (KAM), 2022 WL 1469387, at \*6 (E.D.N.Y. May 10, 2022) ("Even when a defendant has suffered from hypertension *and* obesity, courts in this Circuit have declined to grant compassionate release."); *United States v. Broadus*, No. 17 Cr. 787 (RJS), 2020 WL 3001040, at \*2 (S.D.N.Y. June 4, 2020) ("[T]he mere allegation that one is overweight, 'in prison, and [that] there is a COVID-19 outbreak nationwide' is not sufficiently 'extraordinary and compelling' to justify early release."); *United States v. Peralta*, No. 19 Cr. 135 (VEC), 2020 WL 6683095, at \*2 (S.D.N.Y. Nov. 12, 2020) ("[A]bsent any additional comorbidities and considering that he is only 28 years old, [the defendant] cannot establish extraordinary and compelling reasons justifying compassionate release based solely on being overweight.").

In sum, the Court has considered all the reasons mentioned above and any others that Bennett raises in passing in his motion papers and finds that no extraordinary or compelling reason justifies releasing him early from prison.

**B. Section 3553(a) Sentencing Considerations**

But even if Bennett had shown "extraordinary and compelling reasons" for compassionate release, the Court would still deny his motion because the section 3553(a) factors weigh heavily

---

for high blood pressure," the records "also note Bennett has a 'hx of noncompliance' and that 'inmate has not taken medication.'" *Id.*

against his early release from prison. The following section 3553(a) factors in particular warrant keeping Bennett's sentence of imprisonment intact: (1) "the nature and circumstances of the offense," (2) the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," (3) the need "to afford adequate deterrence to criminal conduct," and (4) the need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2)(A)-(C).

To begin with, Judge Nathan emphasized at sentencing the "very serious" nature of Bennett's offense. Bennett Sentencing Tr. at 14. Judge Nathan noted that Bennett "plead[ed] guilty to the involvement in the BMB gang conspiracy," "[h]e was a member of the crew called Fourth Boys that became allied with BMB," and "BMB is a violent street gang that operated in the Bronx," trafficking narcotics and engaging in acts of violence including with firearms. *Id.* at 14-15. Bennett personally sold crack cocaine, possessed firearms, and "participated in several violent robberies as part of his involvement in the criminal enterprise." *Id.* at 15. Based on Bennett's "dangerous conduct," Judge Nathan found that "a serious sentence is warranted and necessary in order to deter Mr. Bennett and others, reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense." *Id.*

While Bennett has enrolled in the RDAP and GED programs while in prison, Bennett's long criminal history combined with Judge Nathan's below-Guidelines sentence counsel against releasing him. Bennett has committed a laundry list of crimes starting at the age of fourteen and, as Judge Nathan observed, he continued to engage in criminal activity despite repeated interactions with the criminal justice system. *Id.* at 16; PSR ¶¶ 42-43, 85-90. That said, Judge Nathan acknowledged the fact that Bennett "was not a member of the [BMB] gang and not an organizer in any sense of the gang," and that he suffered from "his own addiction issues, which may have

8

played a part in his poor decision-making that led to involvement in the selling of dangerous drugs like crack cocaine, as well as the violent activity." Bennett Sentencing Tr. at 17. Taking all of these factors into consideration, Judge Nathan sentenced Bennett to ninety-six months' imprisonment, which was significantly lower than the advisory Guidelines range of 130 to 162 months' imprisonment. Thus, even though Bennett seeks only a four-month reduction of his imprisonment, the section 3553(a) factors compel the conclusion that Bennett should not be released early from his imposed sentence as Judge Nathan already imposed a below-Guidelines sentence and anything less would undermine the important interests that Judge Nathan properly recognized at sentencing, including the seriousness of Bennett's crime, as well as the need for just punishment of the offense, for specific deterrence, and to protect society from Bennett committing further crimes.[5]

## IV. Conclusion

For the above reasons, the Court denies Bennett's motion for compassionate release. The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to Defendant Shane Bennett and note service on the docket.

SO ORDERED.

Dated: August 17, 2022
New York, New York

_____
JOHN P. CRONAN
United States District Judge

---

[5] Because the Court finds that Bennett has not demonstrated extraordinary and compelling reasons for compassionate release, and the section 3553(a) factors weigh against Bennett's early release from prison, the Court does not reach the Government's argument that Bennett may not obtain compassionate release because he cannot show that he is not a danger to the community. *See* Opposition at 4-5.